**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-CR-337-JFH** |
| **MARSHALL CHIPPEWA,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

Before the Court is the Motion to Revoke Order Setting Conditions of Release ("Motion") filed by the United States of America (the "Government"). Dkt. No. 45. Defendant Marshall Chippewa ("Defendant") was originally ordered released on conditions by Magistrate Judge Susan E. Huntsman. Dkt. No. 42. The Government filed the instant Appeal requesting the Court revoke Magistrate Judge Huntsman's release order pursuant to 18 U.S.C. § 3145(a), and order Defendant detained pending trial. Dkt. No. 42 at 1, 11. Defendant filed his Response in opposition to the Government's Motion on January 26, 2023. Dkt. No. 47.

## BACKGROUND

On August 2, 2021, the Government filed an Indictment, charging Defendant with one count of Arson. Dkt. No. 16. On August 3, 2021, Defendant was committed for a psychological and psychiatric examination to determine his competency to stand trial. Dkt. No. 18; Dkt. No. 19. After reviewing a copy of the competency evaluation and conducting a hearing, Magistrate Judge Susan E Huntsman (the "magistrate judge") found Defendant incompetent to stand trial. Dkt. No. 26. Defendant was subsequently treated to competency. Dkt. No. 35; Dkt. No. 37. Defendant was arraigned on January 20, 2023. Dkt. No. 38. The magistrate judge held a detention hearing on January 23, 2023. Dkt. No. 40.

Regarding Defendant's criminal history, the Government proffered and introduced evidence that Defendant was: (1) arrested as a juvenile for assault and battery; (2) convicted of manslaughter (accessory before the fact) in 2004; (3) arrested for failure to appear on charges in 2005; (4) arrested for malicious service of process in a civil case in 2019; (5) arrested in connection with a string of residential burglaries in April 2021; and (6) arrested for the instant arson offense in July 2021. Dkt. No. 49 at 3-8, 12-13. Regarding Defendant's personal characteristics, the Government introduced evidence that Defendant has: (1) lived the majority of his life outside the state of Oklahoma; (2) not maintained regular employment; (3) admitted to daily use of marijuana and methamphetamine; and (4) been diagnosed with delusional disorder by the competency evaluator. *Id.* at 12-13. Based on this evidence, and the nature of the offense conduct in this case, which involved Defendant setting fire to a QuickTrip gas station while at least one employee was inside, the Government argued that no combination of conditions could ensure that Defendant's subsequent appearance and the safety of the community. *Id.* at 13-16.

Counsel for Defendant argued that after serving his sentence for the accessory to manslaughter conviction, there was minimal criminal history until the 2021 arrests, which he categorizes as "substance abuse and mental health driven incidents." *Id.* at 18. Counsel observed that the difference in Defendant from their initial meeting and counsel's request that Defendant be evaluated for competency and now, after Defendant has been sober and treated to competency is "like night and day." *Id.* at 17. According to counsel, if Defendant was released on home detention, he could live with his mother, who has stable employment and continue to pursue substance abuse and mental health treatment. *Id.* at 18-19.

Based on the parties' arguments and submissions, the magistrate judge found that: (1) the weight of the evidence against Defendant for the instant offense is strong; (2) Defendant has a

history of mental health and substance abuse issues; (3)  Defendant has a significant criminal history that includes a prior conviction as an accessory to manslaughter.  *Id.* at 23-24.  Nonetheless, the magistrate judge found that the Government had not met its burden to show by clear and convincing evidence that there was no condition or combination of conditions that would reasonably assure the safety of others and the Government had not shown by a preponderance of the evidence that there was no condition or combination of conditions that would reasonably assure Defendant's appearance as required.  *Id.* at 24-25.  The magistrate judge concluded that restrictive conditions of release, including intensive drug treatment and testing, home confinement, and location monitoring would be sufficient to ensure that Defendant would appear as required and remain safe to the public at large.  *Id.*

The Government filed the instant Motion seeking to revoke the magistrate judge's release order.  Dkt. No. 45.  With it's Motion the Government submitted additional evidence regarding Defendant's criminal history that was not presented to the magistrate judge.  Dkt. No. 45-4.  The Court held a hearing on February 6, 2023 to allow the parties to address evidence relevant to the issue of detention that was not presented at the initial detention hearing.  Dkt. No. 51.

## STANDARD

Under the Bail Reform Act of 1984, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  In making this determination, the Court must consider:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the [defendant];

(3) the history and characteristics of the [defendant], including—

>   (A) the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>   (B) whether, at the time of the current offense or arrest, the [defendant] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.

§ 3142(g).  The Government has the burden of proving by a preponderance of the evidence that the defendant presents a risk of flight and by clear and convincing evidence that he presents a danger to the community.  *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).  Where a  magistrate judge orders a defendant released, the Government may file a motion to revoke the release order.  18 U.S.C. § 3145(a).  The district court reviews such a motion de novo.  *Cisneros*, 328 F.3d at 616 n.1.

Here, each of the § 3142(g) factors weigh in favor of detention.

## I.     The Nature and Circumstances of the Offense Charged.

The first factor the Court must consider is the nature and circumstance of the offense charged.  Defendant is charged with one count of arson, which is a crime of violence under 18 U.S.C. §3456.[1]  According to the Government, on the morning of July 26, 2021, Defendant set fire

---

[1] The Bail Reform Act defines a "crime of violence" as:  "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or (C) any felony under chapter 77, 109A, 110, or 117."  18 U.S.C. § 3156.  Although the Tenth Circuit has not directly addressed the question, several courts have held that arson is a "crime of violence" under this statute.  *See e.g. United States v. Mitchell,* 23 F.3d 1,

4

to the exterior of a QuickTrip convenience store, while at least one employee was inside.  Dkt. No. 45-5 at 3-10.  When the employee exited the building, Defendant entered, poured gasoline over the checkout counter, and set a second fire.  *Id.*  Defendant left the scene in a vehicle and was involved in a collision nearby.  *Id.* at 1, 4, 9.  Defendant exited his vehicle and began hitting the window of second vehicle.  *Id.*  As police approached, Defendant attempted to flee the scene of on foot.  Defendant was apprehended and taken back to the QuickTrip, where the store clerk positively identified him as the person who set fire to the building.  *Id.*  Because the offense conduct in this case demonstrates a clear risk of danger to the community, this factor weighs in favor of detention.

## II.     The Weight of the Evidence.

The second factor the Court must consider is the weight of the evidence against Defendant. Here, the Government has submitted:  (1) a witness statement by the store clerk working the morning of July 26, 2021, in which the clerk describes watching Defendant pour gasoline over the checkout counter and ignite a fire and confirms that he positively identified the suspect who police later brought back to the store [Dkt. No. 45-5 at 14]; (2) police reports indicating that when apprehended after the vehicle collision, Defendant matched the physical description of the arson suspect given by the store clerk [*Id.* at 1, 18]; (3) police reports indicating that the store clerk positively identified Defendant after he was apprehended and taken back to the store [*Id.*]; (4) a police report indicating that Defendant's vehicle smelled strongly of gasoline and had a QuickTrip cup in the console [*Id.*]; (5) police reports indicating that during a search incident to Defendant's arrest, officers found a lighter in Defendant's pocket [*Id.*]; (6) a fire investigator's summary of

---

2 n. 3 (1st Cir. 1994) (per curiam) (holding that federal arson as set forth in 18 U.S.C. § 844(i) is a "crime of violence" under 18 U.S.C. § 3156(a)(4)); *United States v. Marzullo,* 780 F.Supp. 658, 662 & n. 7 (W.D. Mo. 1991) (same); *United States v. Shaker,* 665 F.Supp. 698, 702 n. 4 (N.D. Ind. 1987) (same).

QuickTrip surveillance video from July 26, 2021, which showed a vehicle matching the description of Defendant's vehicle pulling up to the store, a flame on the driver's side of the vehicle, a large flame at the exterior of the building, a customer informing the store clerk of the exterior fire, Defendant removing a gasoline can from the vehicle and entering the store, Defendant pouring gasoline near the check register, Defendant lighting the counter tops on fire, Defendant pouring more gasoline in the checkout area, Defendant pouring motor oil on the counter tops, Defendant running from the building and leaving the scene in his vehicle [*Id.* at 3-4]; and (7) a report by a fire investigator concluding that the fires at the store on July 26, 2021 were separately and intentionally set [*Id.* at 7].  In light of the compelling weight of the evidence, this factor weighs in favor of detention.

### III.     The History and Characteristics of Defendant

The third factor the Court must consider is the history and characteristics of Defendant. The Court takes judicial notice of the Pretrial Services Report ("the Report"), which indicates that Defendant has lived the majority of his life outside of Oklahoma, and while he has family in the state, he also has ties to Colorado, where his children reside.  Dkt. No. 45-3 at 2, 4.  According to the Report, Defendant has not held stable employment since 2020.  *Id.*  The Report also indicates that prior to his 2021 arrest relative to the charges in this case, Defendant used marijuana and methamphetamine on a daily basis.  *Id.* at 3.

After his initial appearance in this case, the Court granted a motion by Defendant's counsel for an evaluation of Defendant's competency to stand trial.  Dkt. No. 19 .  The initial competency evaluation report indicated that Defendant was suffering from delusional disorder.  Dkt. No. 24 at 14.  Defendant was found incompetent to stand trial and committed to the custody of the Attorney General for treatment.  Dkt. No. 27.  Defendant was reevaluated for competency beginning in

August 2022 [Dkt. No. 45-7] and found competent to stand trial on January 20, 2023 [Dkt. No. 37].  The second competency evaluation report indicates that Defendant's delusional disorder is likely triggered by his heavy methamphetamine use and that Defendant's continued abstinence from substance abuse is key to his ongoing competent status.  Dkt. No. 45-7 at 17.

Regarding Defendant's criminal history, based on the Pretrial Services Report and additional evidence submitted by the Government, Defendant's criminal history includes the following:  (1) a 2001 arrest for assault and battery [Dkt. No. 45-3 at 8]; (2) a 2003 conviction for assault [Government Hearing Ex. 8]; (3) a 2003 conviction for possession of alcohol as a minor [*Id.*]; (4) a 2003 conviction for carrying a concealed weapon [*Id.*]; (5) a 2005 arrest for failure to appear (in an unknown case) [Dkt. No. 45-3 at 8]; (6) a 2005 conviction for accessory to manslaughter related to a physical altercation in which Defendant's brother stabbed the victim and Defendant and his brother beat the eighteen (18) year-old victim as he tried to escape [Dkt. No. 45-1; Dkt. No. 45-3 at 7; Dkt. No. 45-2]; (7) a 2019 arrest for malicious service of process in a civil action [*Id.*]; (8) a 2019 conviction for malicious mischief [Dkt. No. 45-4]; and (9) a 2021 arrest in connection with several residential burglaries [Government Hearing Ex. 9].  Importantly, at the time of the offense conduct in this case, Defendant was on probation in connection with his 2019 conviction for malicious mischief.  Dkt. No. 45-4.

The Court has considered:  (1) Defendant's minimal ties to Oklahoma; (2) Defendant's substance abuse and mental health history; (3) Defendant's criminal history, which includes arrests for failure to appear and a conviction for a serious violent crime; and (4) Defendant's continued criminal activity while on probation.  Based on Defendant's history and characteristics, this factor weighs in favor of detention.

#### IV.    The Nature and Circumstances of the Danger to any Person or the Community.

The final factor the Court must consider is the nature and seriousness of the danger to any person or the community that would be posed by Defendant' release.  "The concern about safety is to be given a broader construction than the mere danger of physical violence.  Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community."  *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989).  As noted, Defendant has demonstrated a pattern of engaging in dangerous criminal activity, even while he is on probation.  For example, the offense conduct in this case—which involves Defendant setting fire to a building with at least one person inside, attempting to flee, and colliding with another vehicle—demonstrates a flagrant disregard for the safety of the community.  Although Defendant argues that such conduct was linked to his prior substance abuse and has expressed an interest in continued treatment, the Court is not satisfied that if released, Defendant would continue to abstain from substance abuse and criminal activity.  Accordingly, this factor weighs in favor of detention.

### CONCLUSION

Having conducted a de novo review, the Court finds that the Government has shown by clear and convincing evidence that Defendant presents a danger to the community and no condition or combination of conditions will alleviate this risk.  Therefore, Defendant will be detained pending trial.

IT IS THEREFORE ORDERED that the Government's Motion [Dkt. No. 45] is GRANTED.

IT IS FURTHER ORDERED that Defendant Marshall Chippewa shall be detained pending trial.  Defendant is committed to the custody of the Attorney General or a designated representative

for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal.  Defendant must be afforded a reasonable opportunity to consult privately with defense counsel.  On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

Dated this 6th day of February 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE